## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

MICHAEL D. DUNLAP
ADC #114705                                                      PETITIONER


VS.                          5:10CV00136 JMM/JTR


RAY HOBBS, Director,
Arkansas Department of Correction                               RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Judge James M. Moody.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically

identify that finding and the evidence that supports your objection.  An original and

one copy of your objections must be received in the office of the United States

District Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file

timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.   An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201

## I.  Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Michael D. Dunlap ("Petitioner"), who is collaterally attacking his state court convictions for possession of cocaine with the intent to deliver and possession of drug

paraphernalia.  (Docket entry #2).  Respondent has filed a Response (docket entry #12), to which Petitioner has filed a Reply.  (Docket entry #17).  Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the relevant procedural history of the case in state court.

On November 7, 2006, a Ouachita County jury convicted Petitioner of possession of cocaine with the intent to deliver and possession of drug paraphernalia. (Docket entry #11-1).  As a habitual offender, he was sentenced to an aggregate term of 480 months of imprisonment.[1]

Petitioner appealed to the Arkansas Court of Appeals, where his sole argument was that the evidence was insufficient to support his convictions.  On November 28, 2007, the Court affirmed.  *Dunlap v. State*, 2007 WL 4181547 (Nov. 28, 2007) (unpublished decision).

On January 9, 2008, Petitioner filed a *pro se* Rule 37 Petition in Ouachita County Circuit Court.  (Rule 37 Tr. 18-25).  On December 15, 2008, the trial court conducted an evidentiary hearing.  (Rule 37 Tr. 123-141).  On December 16, 2008,

---

[1]The prosecution also moved to revoke Petitioner's suspended sentences in two unrelated cases.  (Trial Tr. 36).  Following Petitioner's conviction, the trial court revoked those suspended sentences.  (Trial Tr. 173-174).  The trial court imposed an additional 120 months of imprisonment on the revocations, to run consecutive to the 480 months for the underlying convictions.  (Trial Tr. 174).

the trial court entered an Order denying Rule 37 relief.  (Rule 37 Tr. 112-114).

Petitioner appealed the denial of Rule 37 relief to the Arkansas Supreme Court. On March 4, 2010, the Court affirmed.  *Dunlap v. State*, 2010 Ark. 111, 2010 WL 746185 (2010) (per curiam).

Petitioner initiated this habeas action on May 5, 2010.  (Docket entry #2).  In his *pro se* Petition, he argues that: (1) his lawyer was constitutionally ineffective for failing to object to improper remarks made by the prosecutor in closing arguments; (2) his lawyer was constitutionally ineffective for failing to adequately prepare and investigate the police officer who testified against him at trial; (3) the prosecution violated his due process rights by mischaracterizing the evidence and using "biased and irrelevant" evidence against him; (4) there was insufficient evidence to support his convictions; (5) his lawyer was constitutionally ineffective for inadequately cross-examining the police officer who allegedly perjured his testimony and falsified his report; and (6) his lawyer was constitutionally ineffective for failing to raise certain arguments on direct appeal.[2]  (Docket entry #2).

For the reasons discussed below, the Court concludes that all of Petitioner's

---

[2]Petitioner purports to assert seven different "grounds" for relief but his arguments overlap and repeat each other.  Properly construed, Plaintiff has actually asserted five grounds for habeas relief, each of which will be analyzed in the "Discussion" section of this Recommended Disposition.

habeas claims are either without merit or are procedurally defaulted. Thus, the Court recommends that the Petition be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A. Ineffective Assistance of Counsel — Counsel's Alleged Failure to Object to the Prosecutor's Remarks in Closing Arguments

According to Petitioner, his appointed trial lawyer, David Talley, was constitutionally ineffective for failing to object to improper remarks made by the prosecutor during closing arguments. (Docket entry #2 at 4-5). Petitioner asserts that the prosecutor made false statements about the "drug problem in Camden," his criminal history, and his "occupation as a drug dealer."

Respondent argues that this claim is procedurally defaulted due to Petitioner's failure to obtain a ruling on it from the trial court. Although he raised the claim in his Rule 37 Petition, the trial court did not address the claim in its Order denying Rule 37 relief.

The only Rule 37 claims addressed by the trial court in its Order were Petitioner's claims that his lawyer was constitutionally ineffective in his investigation and cross-examination of Camden police officer Romero Scruggs. (Rule 37 Tr. 113-

5

114).[3] On appeal, the Arkansas Supreme Court limited its review to those claims and held that the remainder of Petitioner's ineffective assistance of counsel claims were not preserved for review: "An appellant has an obligation to obtain a ruling on any issue to be preserved for appeal." *Dunlap v. State*, 2010 WL 746185, *1 (Ark. Mar 4, 2010).

If the highest state court deciding a habeas claim makes it clear that its judgment rests on a state procedural ground that is independent of federal law, a federal habeas court is generally precluded from reviewing the claim:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. If the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar, a federal habeas court is precluded from reviewing the claim. Only a firmly established and regularly followed state practice may be interposed by a State to prevent subsequent review by a federal court of a federal constitutional claim.

*Oglesby v. Bowersox*, 592 F.3d 922, 924 (8th Cir. 2010) (internal quotations and citations omitted).

Well-established Arkansas law requires a party to obtain the trial court's ruling

---

[3]The transcript of the Rule 37 evidentiary hearing ("Rule 37 Tr.") is docketed as Exhibit E to docket entry #13.

on a claim in order to preserve it for appellate review. This rule has been held to apply to Rule 37 proceedings. *See Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996) (holding that it was the Rule 37 petitioner's obligation to obtain a ruling on a claim that was not addressed in the trial court's order denying Rule 37 relief). The Arkansas Supreme Court has explained that, when a trial court does not rule on a particular claim in an order denying Rule 37 relief, the petitioner must file a request with the trial court for a "modification" of the order so as to obtain a "ruling on the omitted issue[.]" *Beshears v. State*, 340 Ark. 70, 73, 8 S.W.3d 32, 34 (2000).

The Arkansas Supreme Court's holding that Petitioner had not obtained a ruling on his Rule 37 claim constitutes an adequate and independent state procedural bar. Thus, Petitioner is in procedural default on his ineffective assistance of counsel based on his lawyer's alleged failure to object to the prosecutor's improper remarks in closing arguments.

In his Reply (docket entry #17), Petitioner reargues the merits of his claim but does not address, much less establish, either the cause and prejudice or actual innocence exceptions to procedural default. Thus, the Court recommends that Petitioner's first claim for habeas relief be denied.

**B.     Ineffective Assistance of Counsel — Defense Counsel's Alleged Failure to Adequately Investigate and Cross-Examine Officer Scruggs**

The Court has combined Petitioner's second and fifth habeas claims, which are related and overlap.  Accordingly, those claims will be analyzed together.

Petitioner's second claim for relief is that defense counsel did not adequately investigate and discover information that he could have used to impeach the primary witness who testified against him, Camden police officer Romero Scruggs.  (Docket entry #2 at 5).  His fifth claim is that defense counsel did not adequately cross-examine Officer Scruggs to impeach his "perjured" trial testimony and false report. (Docket entry #2 at 7-8).  In order to place these claims in context, the Court first will review the pertinent trial testimony.

Carol Brewer, Petitioner's ex-wife, testified that, on May 17, 2006, she was sitting in the front yard of her Camden apartment drinking.  (Trial Tr. 49).[4]  She was approached by Petitioner, her ex-husband.  He was standing in the yard when a police car stopped and officers approached the apartment.  (Trial Tr. 52-53).  She testified that Officer Scruggs told Petitioner that  he was under arrest on a failure-to-appear warrant.  (Trial Tr. 54).  Petitioner then went into his pockets and handed her a box, some keys, and money.  (Trial Tr. 55).  She did not see him hand her a cell phone or

---

[4]The trial transcript ("Trial Tr.") is docketed as Exhibit A to docket entry #13.

8

a plastic baggie, although she admitted that she was not paying close attention to what he was handing to her.  (Trial Tr. 55-56).

Officer Scruggs told her: "everything he hands you . . . lay it in that chair." (Trial Tr. 56).   After she "laid it in the chair," she saw Officer Scruggs take possession of the items.  (Trial Tr. 56).

Camden police officer Glen Gilbert testified that, on May 17, 2006,  he was patrolling with Officer Scruggs.  Officer Scruggs saw Petitioner and radioed to ask whether he had "any outstanding warrants or if [he] was on the housing authority banned list."  (Trial Tr. 67).  The dispatcher notified them that Petitioner had an active warrant for his arrest. (Trial Tr. 67).  Officer Scruggs told Petitioner he had an active warrant, and the officers arrested him.  (Trial Tr. 68).

While grabbing Petitioner's right arm, Officer Gilbert saw him pulling objects out of his pocket.  (Trial Tr. 68). He was handing them to Ms. Brewer.  (Trial Tr. 69). Officer Gilbert saw Petitioner take a digital scale out of his right pocket.  (Trial Tr. 70).  He also testified that he did not see every item that Petitioner pulled from his pocket, but that he appeared to hand some more items to Ms. Brewer.  (Trial Tr. 72). Officer Scruggs took possession of those items.  (Trial Tr. 71).

Camden police officer Romero Scruggs testified that he told Petitioner that he was under arrest.  (Trial Tr. 92).  Without being instructed to do so, Petitioner began

removing items from his right coat pocket. (Trial Tr. 92). He went into his pocket two times and handed items to Ms. Brewer. The first time, he retrieved a digital scale, and the second time he retrieved a cell phone and a plastic baggie containing an off-white substance. (Trial Tr. 93-94). Officer Scruggs asked Ms. Brewer for the baggie she received from Petitioner and she handed it to him. (Trial Tr. 95). He looked inside and saw what he thought was crack cocaine. (Trial Tr. 96). A forensic chemist with the Arkansas State Crime Laboratory testified that the substance was 12.45 grams of cocaine base. (Trial Tr. 147).

On direct appeal, the Arkansas Court of Appeals rejected Petitioner's argument that there was insufficient evidence that he possessed the cocaine. The Court held that "based on Officer Scruggs['] testimony alone, the State provided substantial evidence that the illegal substance was in [Petitioner's] possession." *Dunlap*, 2007 WL 4181547 at *1.

In Petitioner's Rule 37 evidentiary hearing, the only witness he called was David Talley, his appointed lawyer at trial.[5] Mr. Talley testified that he interviewed

---

[5]During the Rule 37 hearing, Petitioner stated that he "thought the police officer [presumably Scruggs] was going to . . . show up today [for the hearing]." (Rule 37 Tr. 125). When asked whether he had subpoenaed Officer Scruggs, Petitioner said he did not know where Officer Scruggs was. (Rule 37 Tr. 125). The trial court confirmed that "No one knows where he is. He's left the jurisdiction and can't be located is my understanding." (Rule 37 Tr. 126).

Petitioner prior to trial.  Petitioner told him that Officer Scruggs manufactured the case against him because Scruggs was in a romantic relationship with Petitioner's ex-wife, Ms. Brewer.  Mr. Talley testified that he "talked to him [Ms. Brewer's husband] as far as what he suspected and what he knew about it."  (Rule 37 Tr. 129). According to Talley, Ms. Brewer's husband "could not say that [his wife was having an affair]."[6]  (Rule 37 Tr. 132).  Talley also reviewed the prosecutor's file, which included a statement from Ms. Brewer and statements from the police officers.  (Rule 37 Tr. 129).

Petitioner asked Talley about Officer Scruggs' motive to lie because Petitioner had filed a "civil suit" against him:

> Q: On Romario Scruggs, the police officer, what about the, the bias motive that he had when I filed the civil suit against him that I was telling you about that, about his credibility when he was on the stand because that's what the whole case was right here.  They used his credibility.
>
> A: And I believe that that was argued in front of the jury.  And that the jury either discounted it or didn't believe it.
>
> Q: I'm talking about the civil suit that I filed against him in 2004 that I

---

[6]At trial, Mr. Talley cross-examined Scruggs in an attempt to suggest that he had a relationship with Ms. Brewer: "How many years have you known Ms. Brewer? . . . Now have there ever been occasions when her husband has come home and you've been there talking to Ms. Brewer? . . . Now if he were to testify that he's come home several times and you've been having conversations with his wife when he comes on from work, would you disagree with that?"  (Trial Tr. 98-99).

told you about.

A: Correct.  And if I recall he was asked about that on the stand.

Q: I never did see that in the transcript.

A: Okay.

(Rule 37 Tr. 129).[7]  Petitioner also asked Talley whether he had done anything to

determine whether Scruggs had "lied on the stand" or "filed false reports":

Q: Okay, what about did ever do in, an investigation on his past to see
if he ever filed false reports before or lied on the stand?

A: If he had lied on the stand before and if it had been proven he would
not have been a police officer, had he been convicted of perjury.

Q: Well, I got information on that right there, before he came to Camden
Police Department that he done it before.[8]  And that, like I told you

---

[7]It appears that Talley was mistaken in stating Scruggs was asked about a "civil
suit" at trial.  However, in the Rule 37 proceeding, Petitioner never developed any
information or evidence about the 2004 "civil suit" to which he referred.

In his habeas papers, Petitioner mentions a 2004 "1983 complaint" that he
allegedly filed against Officer Scruggs with the Department of Justice.

In his Rule 37 appellate brief to the Arkansas Surpeme Court, he attached a
number of documents that were never made part of the record in the Rule 37
proceeding.  One of those documents is a March 16, 2004 Department of Justice
"Complaint Form" in which Petitioner asserted that the Camden Police Department
and "Detective Nells" discriminated against him based on his race.  He claimed that
he was harassed, falsely accused, and "falsely locked up on hearsay."  There is
nothing in this document that mentions Officer Scruggs.  (Docket entry #13, Ex. F).

[8]Petitioner never introduced any evidence to explain or support his vague
suggestion that he had "information" that Officer Scruggs had "done it before" he was
employed by the Camden Police Department.

even at trial, I mean, while you were coming and, and interviewing me that — I mean the police officer was going to lie. And he did lie.

A: Which I argued to the jury that the officers that, all three of [the] witnesses were not telling the truth due to the inconsistencies of their own testimony. In my opinion they're, in order to impeach a witness it's very limited. And it can't be done on [a] collateral matter. And the various things that you told me, in my opinion are all collateral matters. And I was stuck with the answers that he gave.

(Rule 37 Tr. 130).

On appeal, the Arkansas Supreme Court applied the standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),[9] and rejected Petitioner's ineffective assistance of counsel arguments:

Here, appellant did not provide factual substantiation for his claims. Although appellant alleged that the police officer provided false testimony and that the officer had a relationship with one of the witnesses, he provided no more than conclusory statements to that effect. Conclusory statements cannot be the basis of postconviction relief. *State v. Brown*, 2009 Ark. 202, ___ S.W.3d. ___.

Trial counsel testified at the Rule 37.1 hearing that he had talked to the husband of the witness and had been unable to obtain information concerning the purported relationship between the witness and the police officer. He testified, and the record confirms, that he did question the police officer concerning the relationship. Appellant did not introduce any evidence or information of such a relationship that counsel might have found from further investigation or that counsel

---

[9]To prevail on a claim of ineffective assistance of counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

could have used to impeach the officer's testimony. Appellant's argument established no prejudice. As a result, the argument was merely a challenge to the witness's credibility and was therefore not a claim cognizable in a Rule 37.1 proceeding. *See Stephens v. State*, 293 Ark. 231, 737 S.W.2d 147 (1987).

Appellant's additional claims, his allegations that trial counsel did not communicate with him or investigate the case and was unprepared for trial, are likewise deficient in factual substantiation. General assertions that counsel did not meet with the defendant enough, or did not aggressively prepare for trial are not sufficient to establish an ineffective assistance of counsel claim. *Thompson v. State*, 307 Ark. 492, 821 S.W.2d 37 (1991). Where a defendant makes only conclusory allegations that fail to specify what the missing effort would have produced to reach a different result, the allegations will not sustain a claim of ineffective assistance of counsel. *Furr v. State*, 297 Ark. 233, 761 S.W.2d 160 (1988). The trial court did not err in finding that appellant failed to demonstrate prejudice as to these claims.

*Dunlap*, 2010 WL 746185 at *2.

During his Rule 37 proceeding, Petitioner introduced no evidence or facts to support his ineffective assistance of counsel claims other than the allegation that Officer Scruggs was in some kind of romantic relationship with Ms. Brewer. The record reflects that Talley investigated that issue and cross-examined Scruggs at trial on that point. Beyond that, Petitioner did not develop any further factual basis for his claims, other than what the Arkansas Supreme Court characterized as merely "conclusory statements."

In attempting to show that he is entitled to habeas relief, Petitioner relies

14

entirely on evidence that was *never* introduced or made a part of the record in the state court proceedings.  He emphasizes a disciplinary sanction that Officer Scruggs received while he was employed by the El Dorado police department in 2002.  According to an August 9, 2002 internal affairs investigative report, Scruggs admitted lying about an off-duty incident in order to avoid being fired.[10]  (Docket entry #2 at 26-29).   He was suspended for thirty days without pay for violation of El Dorado police department regulations prohibiting the excessive use of intoxicants and lying or filing a false report.  (Docket entry #2 at 30-31).   Petitioner has also submitted several partially redacted letters that he obtained from the Arkansas Public Defender Commission where former clients of Mr. Talley complained about his representation.  (Docket entry #2 at 12-22).

Petitioner's reliance on the preceding documents is an attempt to expand the record beyond what was developed in the state court proceedings.  "[A] federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court[.]" *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006).  Furthermore,

---

[10]On June 6, 2002, Scruggs was off-duty when he got into a drunken quarrel with his wife.  While cooling off, he witnessed a man in a fight with two other subjects.  Scruggs attempted to break up the fight, and the subjects turned on him. He subsequently discharged the entire 17-round clip of his service weapon into the air. (Docket entry #2 at 26-29).  In an internal affairs investigation about the incident, Scruggs admitted that his written report exaggerated the number of people involved in the fight to avoid being fired.  (Docket entry #2 at 27).

a habeas petitioner seeking to expand the record must satisfy the statutory prerequisites for an evidentiary hearing under 28 U.S.C. § 2254(e)(2).   *See Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007); *see also* Rule 7 of the Rules Governing Section 2254 cases.

Under 28 U.S.C. § 2254(e)(2), the Court " shall not " hold an evidentiary hearing unless the petitioner shows: (1) that his claims rely on "a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court," or on "a factual predicate that could not have been previously discovered through the exercise of due diligence," and (2) that "the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." Petitioner has not made any showing to justify such an expansion of the record.  Thus the Court cannot consider the evidence from outside the record that Petitioner has submitted in support of this habeas claim.

Finally, in analyzing Petitioner's ineffective assistance of counsel claims, the Arkansas Supreme Court identified and applied the correct *Strickland* standard. Petitioner has failed to meet his burden of showing that the Arkansas Supreme Court unreasonably applied *Strickland*, or that its decision was based on an reasonable determination of the facts. *See* 28 U.S.C. § 2254(d).  Thus, the Court recommends

16

that Petitioner's second and fifth claims for relief be denied.

### C.    Prosecutorial Misconduct

Petitioner's third claim for relief is that the prosecutor "slandered" him at trial and "illegally used Petitioner's name and criminal history to destroy" his reputation in order to obtain a conviction.  This claim is procedurally defaulted for the same reasons discussed in section II.A of this Recommended Disposition.[11]

### D.    Sufficiency of the Evidence Supporting Petitioner's Convictions

In Petitioner's fourth claim for relief, he challenges the sufficiency of the evidence supporting his convictions. "Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrison v. Burt*, 637 F.3d 849, 854 (8th Cir. 2011) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Under Ark. Code Ann. § 5-64-401(a) (2006), it is unlawful for any person to "possess with intent to . . . deliver a controlled substance." Possession of more than

---

[11]Not only did Petitioner fail to obtain a ruling from the trial court on his "prosecutorial misconduct" claim, but the Arkansas Supreme Court explicitly held that this claim would have only been cognizable on direct appeal. *See Dunlap*, 2010 WL 746185 at *1 n.1 ("prosecutorial misconduct is an issue that may be raised on direct appeal and is therefore not a claim that may be raised in a Rule 37.1 petition") *(citing Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006)).

one gram of cocaine creates a rebuttable presumption that the person possesses it with intent to deliver. *See* Ark. Code Ann. § 5-64-401(d) (2006).  Under Ark. Code Ann. § 5-64-403(c) (2006), it is unlawful for any person "to possess . . . drug paraphernalia" defined as "any equipment, product, and material of any kind that are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance[.]" Ark. Code Ann. § 5-64-101(14)(A) (2006).

On direct appeal, the Arkansas Court of Appeals rejected Petitioner's sufficiency of the evidence challenge to his conviction for possession of a controlled substance: "Dunlap does not dispute that the substance recovered was cocaine; he merely disputes the fact that he possessed it. However, based on Officer Scruggs['] testimony alone, the State provided substantial evidence that the illegal substance was in Dunlap's possession. Further, the State presented testimony from Cassie Burns, a forensic chemist with the Arkansas State Crime Laboratory, that the cocaine base recovered from the scene weighed 12.450 grams. Contrary to Dunlap's argument otherwise, this amount is well over the requisite one gram that is necessary to create a statutory presumption of intent to deliver." *Dunlap*, 2007 WL 4181547 at *1.

The legal standard recited and applied by the Arkansas Court of Appeals, while resting on state law, is consistent with *Jackson* and, therefore, was not "contrary to" applicable United States Supreme Court precedent under § 2254(d)(1). *See* S*era v. Norris*, 400 F.3d 538, 543 n.1 (8th Cir.2005) (legal standards applied by the Arkansas Supreme Court to assess the sufficiency of the evidence are not contrary to United States Supreme Court precedent). Furthermore, on habeas review, this Court is required to view the evidence in the light most favorable to the state, and it must presume that all conflicting inferences were resolved in the state's favor. Under that standard, the evidence was constitutionally sufficient to support Petitioner's conviction for possession of a controlled substance with intent to deliver. Accordingly, the Arkansas Court of Appeals' decision on that issue was reasonable.

Finally, on direct appeal, Petitioner argued that the evidence was insufficient to support his conviction of possessing drug paraphernalia "because the scale he possessed 'could' be used for something other than drug use." *Dunlap*, 2007 WL 4181547 at *2. The Arkansas Court of Appeals rejected this argument because, on appeal, his argument was different from the ground that he asserted in his directed verdict motion at trial: "At trial he argued that he should not be convicted of the paraphernalia charge because scales do not fit the description that provides for 'planting, propagating, cultivating, growing . . . .' Because a party may not change the

19

scope or nature of argument on appeal, but is bound by the objections made at trial, we do not reach the merits of his newly formulated appeal argument."

*Dunlap*, 2007 WL 4181547 at *2.

A federal habeas claim is procedurally defaulted where a state court declines to review it due to the petitioner's failure to follow state procedural rules in presenting it. *See Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006), *cert. denied*, 549 U.S. 1059 (2006). Thus, Petitioner's challenge to the sufficiency of the evidence to support his possession of drug paraphernalia charge is in procedural default.

As cause to excuse his procedural default, Petitioner claims that his lawyer was ineffective for failing to raise certain arguments on direct appeal. While ineffective assistance of counsel may constitute cause to excuse procedural default and allow the Court to reach the merits of a habeas claim, the ineffective assistance of counsel claim itself must have been properly presented in state court: "[T]he exhaustion doctrine requires that a claim for ineffective assistance of counsel be initially 'presented to the state courts as an independent claim before it may be used to establish cause for a procedural default' in a federal habeas proceeding." *Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir.2003) (*quoting Murray v. Carrier*, 477 U.S. 478, 489 (1986)). However, for the reasons explained in the final section of this Recommended

Disposition, Petitioner's ineffective assistance of counsel claim, based on his lawyer's failure to raise certain arguments on direct appeal, is procedurally defaulted.

Thus, the Court recommends that Petitioner's fourth claim for relief be denied.

### E.  Ineffective Assistance of Counsel — Counsel's Alleged Failure to Raise Certain Arguments on Direct Appeal

Petitioner's final argument is that his lawyer was constitutionally ineffective for failing to raise "7 additional grounds that should have been addressed " on direct appeal.  (Docket entry #2 at 8-9).  This claim is procedurally defaulted for the same reasons discussed in section II.A of this Recommended Disposition

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus (docket entry #2) be DENIED, and this case be DISMISSED, WITH PREJUDICE.   IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 20th day of March, 2012.

_____
UNITED STATES MAGISTRATE JUDGE